### FINLEY et al. v. HUNDLEY.
#### No. 14550.

Court of Civil Appeals of Texas. Dallas.

Nov. 14, 1952.

A. F. (Jack) Nossaman, Sherman, Carrington, Gowan, Johnson & Walker, and Dan McElroy, all of Dallas, for appellants.

Moses & Truett, McKinney, for appellee.

BOND, Chief Justice.

This suit was brought by Wilbur Hundley, appellee herein, in the County Court of Collin County, Texas against appellant, Albert Finley, d/b/a Finley's Farm Store, to recover judgment for the value of a gasoline motor which was attached to and made a part of a power hay press, voluntarily surrendered to appellant for sale to discharge an overdue note and chattel mortgage held by the Collin County National Bank.

On November 5, 1948 the appellee purchased the hay press from the appellant, executing a note in the sum of $1,470 bearing 8% interest from date, payable in two installments of $770 on July 1, 1949 and $700 on July 1, 1950 respectively. The note provides:

"This note is given for part of the purchase price of one No. 116 John Deere Power Hay Press No. 73245, and I (maker) hereby agree that title thereto, and to *all repairs and extra parts furnished therefor,* shall remain in the payee, owner and holder of this note, until this note given therefor shall have been paid in money, and if at any time it shall deem itself insecure, it may take possession of said property and hold the same until said note and the expenses of such repossession shall have been paid. If default is made in the payment of this note, * * * then the owner and holder thereof may declare this note due, and may take or retain possession of said property and sell the same at public or private sale with or without notice, pay all expenses incurred thereby, and apply the net proceeds on this note given for the purchase price thereof * * *." (Italics supplied.) As an additional security to said note, and simultaneously therewith, appellee executed and delivered to appellant a chattel mortgage on the said hay press and attachments thereto, with provisions as to accelerating its maturity, possession and power of sale of said property in case of default as in said note, and directed that the proceeds of such a sale be applied to the payment of said note. Upon the execution and delivery of said note and mortgage, the payee therein, A. P. Finley, endorsed and assigned the note and mortgage over to the Collin County National Bank.

On March 19, 1949 Mr. Hundley purchased from Mr. Finley a new and more powerful motor than was originally on the hay press, for a cash consideration of $535.-40. The new motor was to enable the press to perform more efficient and satisfactory service in the baling of hay. Mr. Hundley dismanteled the regular motor and securely bolted the new motor to the press in its place. Soon thereafter Hundley expressed complaint to Mr. Finley, as in the first in-

stance, of the nonperformance of the press with the new motor attached, and because of which, he (Hundley), in June 1949, voluntarily took the press with the attached new motor to Mr. Finley's place of business and verbally authorized Mr. Finley to sell the press and its attachments including the new motor, and apply the proceeds of sale to payment of the note then owned and held by the Collin County National Bank. At that time neither Mr. Finley nor Mr. Hundley had any authority from the officials of the Bank to take possession and sell the hay press. In consequence, on August 20, 1949 Mr. Finley requested Mr. Hundley to obtain consent from the Bank to enable him to sell the hay press; whereupon Hundley went to the Bank and obtained letter of authorization which reads as follows:

"Collin County National Bank McKinney, Texas August 20, 1949. Mr. A. P. Finley, Celina, Texas. Dear Mr. Finley: This will be your authority to sell the hay press and take up the $1,470.00 note I gave you for it. The Collin County National Bank, McKinney, Texas, now holds this note and when you sell the press, pay the note off including the interest and pay the difference to me. Yours very truly, (s) Wilbur Hundley Wilbur Hundley."

In accordance with said authorization, several months thereafter Mr. Finley sold the hay press with the new attached motor for the sum of $1,650 and from the proceeds of said sale paid the Bank the sum of $1,552.18, the amount of principal and accrued interest, leaving net balance of $97.81. Of this balance ($97.81) Mr. Finley paid $36.80 for needed repairs that he had placed on the press to enable the sale, and paid out $125 commission fees to a salesman, and after applying the proceeds as directed, Hundley came out owing Finley the sum of $63.99.

The case was tried to the court without a jury and judgment entered in favor of the appellee against appellant in the sum of $537.40, less the $63.99—net of $471.41. Appellant duly perfected appeal assigning pertinent points of error to the judgment of the trial court as giving effect to the mutual agreement entered into by the parties as a

legal obligation of Mr. Finley to reimburse Mr. Hundley for the value of the motor attached to the press. In the court below Hundley made no contention and assigns no error that Mr. Finley acted in the premises capriciously or fraudulently, or that he was under any obligation legally or morally to sell the hay press other than what he did, or that his action in the premises in no way was to obtain it as an artifice to injure the owner thereof or the mortgagee or assignee Bank. The hay press and attached motor were voluntarily turned over to Mr. Finley for sale. He sold it and applied the proceeds as directed.

We are of the opinion that all the facts, viewing same most favorably to the appellee, as it is our duty to do, point indubitably to a conclusion that the appellant made no binding obligation to Mr. Hundley other than to exercise his best judgment and obtain the highest price for the hay press and attached motor, and apply the proceeds of sale to liquidation of appellee's note to the Collin County National Bank, and whatever sum remained, pay it to appellee. There is no issue raised in this appeal that appellee failed to do that which he voluntarily took upon himself to do. Hr. Hundley having brought the press to Mr. Finley's place of business and turned it over to him for sale and to allocate the proceeds of sale, Mr. Finley's voluntary service was at an end. Mr. Hundley testified:

"Q State whether or not he (Finley) agreed to pay you for the value of your expenditure for that motor in the sum of $535.40? A Yes, sir, *I was supposed to get the money,* that much back out of it.

"Q State whether or not *he indicated that he thought* you might get everything back out of it that you had originally put in it? A Yes, sir.

"(Mr. Nossaman: We object to that. Certainly as leading and suggestive. The Court: Don't lead the witness, counsel.)

"Q State whether or not he made any statement that *you might secure any additional sum over and above the $535.40?* A. Well, he did state *chances were* I wouldn't lose anything on it at all, that he would get more money for it.

"Q State whether or not he made you a positive statement that he would reimburse you in the sum of $535.40 out of the sale, after the sale of the hay press? Sir? A I didn't understand you.

"Q Will you read the question to him? * * * A Well, yes.

"Q Did you rely on that? A Yes.

"Q Did you permit the motor to stay on the hay press? A Yes, sir.

"Q Did he ever tell you anything to the contrary up until the time he sold it several months later? A No, sir, he didn't.

"Q I think that's all.". (Italics supplied.)

On cross-examination:

"Q Mr. Hundley, on November 5, 1948, you owed Mr. Finley $1470.00 still on that press, didn't you? A No, I owed it to the bank. * * *

"Q You have never paid a quarter, have you, on that note? A No, sir, * * *.

"Q Had you taken the press back on August 20, 1949, when you wrote this letter? A Yes, sir.

"Q Huh? A Yes, sir.

"Q How long before that would you say? A Several months before.

"Q Several months. Are you sure about that? A Taken the press back in June, sometime in June. * * *

"Q You took the press back yourself, didn't you? A No, sir.

"Q Huh? A No, sir.

"Q I mean, how did the press get over to Celina? A My brother taken it back.

"Q Huh? A It was already there. It was delivered to there.

"Q I mean who took it back to Mr. Finley's place at Celina? A My brother.

"Q Did your brother do it at your request? A Yes.

"Q Huh? A Yes, sir.

"Q Why didn't you unbolt that motor and take it off while you had it at home? A Well, because Mr. Finley promised to pay me the difference, the difference of my— * * *

"Q. That press would not operate without that motor? A It will with the other attachment.

"Q I say, it wouldn't operate. In other words, for it to be resold to somebody desirous of buying that hay press for the purpose of baling hay as it was then equipped, it would not operate without the motor, would it? A No, sir. * * *

"Q In other words, this was a friendly repossession. You had your brother take it back over to Mr. Finley's at your request and leave it there, press, motor and all, didn't you? A Yes, sir. * * *

"Q I say, when you signed this note and mortgage in November, 1948, you authorized Mr. Finley to repossess it and sell it at private sale if you defaulted in payment of that note, didn't you? A Yes, sir.

"Q And so that there wouldn't be any doubt about it you again authorized him on August 20, 1949, to sell it, didn't you? Didn't you? Is that your signature, sir? A That is my signature, yes, sir.

"Q That is defendant's exhibit number one, which is a letter dated August 20, 1949. That is what we are talking about, isn't it? A Yes, sir. * * *

"Q Now, you were in Mr. Finley's place of business many, many times from the time that you took the press back, authorized him to resell it, until the next May when he did sell it, weren't you? A Not too many times. * * *

"Q You wanted him to sell that press as a unit, as one piece of equipment, motor and all, didn't you? A *I didn't care whether he sold it that way or not.*

"Q You were interested at the time it was repossessed in it being sold for enough to pay Mr. Finley and the Collin County National Bank what you owed them on this note and mortgage, didn't you? A Yes, sir. * * *

"Q You didn't need two motors and so you authorized Mr. Finley to sell that press and motor as one unit in order to pay that note off and if it brought more than what you owed Mr. Finley, *he was to pay you the difference.* Isn't that right? A Yes, sir.

"Q In other words, you had implicit faith and confidence Mr. Finley could sell it more advantageously and sell it for a better price than you could? A Yes, sir.

"Q Have you ever gone over to Mr. Finley's and asked him for that power take-off that you left over there at the time you bought the motor? A He was supposed to have sold it and I asked for the motor on it.

"Q Well, do you want it now? A Yes, sir, I can use it.

"Q We here now tell him that he is perfectly free to come get that power take-off any time that he wants it. You never have gone over there and requested delivery of it, have you? A No, sir."

Under the related facts appellant was duty bound only to exercise his best judgment in the sale of the hay press. He was under no further obligation to Mr. Hundley than the performance of a voluntary service as directed by the Bank and Mr. Hundley. The Bank officials and Mr. Hundley having given Mr. Finley permission in writing to sell the hay press with the attached motor then in possession of appellant, without reservation or limitation, and apply the proceeds of sale as directed therein, in absence of fraudulent conduct on the part of Mr. Finley neither Hundley nor the Bank has any legal claim against Mr. Finley in the transaction. All parties concerned were undertaking to alleviate the necessity of resorting to the sale perforce of the provisions of the mortgage, supra, which authorized the mortgagee or his assigns to seize the hay press and resort to foreclosure of the mortgage lien thereon as in ordinary execution. Thus appellee and the Bank selected appellant as their agent in the performance of their duty. Mr. Hundley's testimony clearly shows what was in the minds of the parties,—"he thought," and he "supposed," and Mr. Finley "indicated" that the hay press with the attached motor would bring more than the Bank's indebtedness; and that the "chances were" that he "wouldn't lose anything on it at all, that he would get more money for it,"—are mere expressions of hope and ex-

pectation, mutuality of their obligation to the performance of duty. True enough, in answer to leading questions of his attorney, Mr. Hundley did testify that Mr. Finley made "a positive statement that he would be reimbursed" $535.50 "out of the sale, after the sale of the hay press"; and that he relied upon such statement and permitted the motor to stay on the hay press, merely carries out the idea of expectation of receiving more out of the sale than was necessary to satisfy the Bank's indebtedness.

A promise or obligation tantamount to a contract must be free and voluntary, mutual, and each of the parties must communicate their reason to the other so that both may know that their minds have met. The mere statement that one of the parties "thought," "supposed," and expected a thing, and the other party "indicated" and stated that the "chances were" that he would get something, or more by sale of the article without foreclosure proceedings, and to that end agreed to sell at private sale, is not such a contract of pecuniary liability.

"To constitute a contract the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms; and all of them must assent to the same thing in the same sense at the same time. Their assent must comprehend the whole proposition, and the agreement must comprise all the terms which they intend to introduce into it. There is no contract where material terms are left for future adjustment, or are not agreed upon; nor does a contract come into existence as long as, in the contemplation of both parties, something remains to be done to establish contract relations." 10 Tex.Jur., sec. 13, p. 27.

In the case here Mr. Finley testified that he made no such contract to refund the sale price of the motor to Mr. Hundley. That he sold the hay press as was delivered to him to the best price obtainable and applied the proceeds as directed. That his services were voluntarily rendered, without further consideration than to act fairly and honestly in the transaction.

We have carefully reviewed the record, and, finding the evidence fully developed, the judgment of the court below is reversed and judgment here rendered that plaintiff (appellee) recover nothing. All costs taxed against appellee.