**Yolanda G. SOLIS, Relator,**

v.

**The Honorable Joe B. EVINS, Presiding Judge of the 206th Judicial District Court, Hidalgo County, Texas, Respondent.**

**No. 13–97–147–CV.**

Court of Appeals of Texas, Corpus Christi.

May 22, 1997.

Rehearing Overruled July 3, 1997.

Brian A. DeVaney, Law Offices of Christa Samaniego, San Antonio, for Relator.

Joe B. Evins, Edinburg, for Respondent.

Andy A. Tschoepe, II, San Antonio, Ramon Garcia, Edinburg, John R. Griffith, McAllen, Gilberto Hinojosa, J. A. Magallanes, Magallanes, Sokat & Hinojosa, Brownsville, for Real Parties in Interest.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

In this original proceeding, the relator seeks a writ of mandamus to correct the trial court's order compelling arbitration of relator's underlying lawsuit. We will conditionally grant the writ.

### Facts

The underlying defamation lawsuit involves relator, as plaintiff and the real party in interest, David Guerra, as defendant. Guerra is the president of International Bank of Commerce—McAllen ("IBC"), and relator is a former IBC teller.

IBC apparently requires that its employees open an IBC account, so that the employee's salary can be electronically deposited. IBC also apparently requires its depositors to sign a "depositor's contract," although IBC has never produced a depositor's contract signed by relator. Nevertheless, IBC has tendered a copy of its standard depositor's contract, which, IBC maintains, must have been signed by relator. The depositor's contract produced by IBC contains a section requiring arbitration.

During 1991, relator was involved in various transactions in the course of her IBC employment which were viewed suspiciously by her employers. IBC's suspicions were reported to federal authorities, and relator was criminally prosecuted for banking offenses. Relator was, however, acquitted.

On August 20, 1993, relator filed a defamation suit ("first suit") against IBC and Guerra, based on the incidents leading to her prosecution and subsequent acquittal. IBC and Guerra filed a motion to compel arbitration, based on the provisions of the depositor's contract, and were successful in obtaining an order compelling arbitration. Prior to arbitration, the case settled.

According to the allegations of relator, Guerra continued to defame relator in social contexts around McAllen, Texas, after the conclusion of the first suit. On July 5, 1996, relator filed another defamation suit ("second suit"), wherein Guerra is the only defendant, based on the allegedly continuing defamation of relator. Guerra filed a motion to compel arbitration, based on the depositor's contract.[1] On February 14, 1997, the Honorable Joe B. Evins, respondent, signed an "Order Granting Motion to Compel Arbitration and to Stay Civil Proceeding" in the second suit, providing as follows:

IT IS THEREFORE ORDERED that:

A. Plaintiff Yolanda Solis is compelled to submit all claims on file herein and all other claims that she may have against David Guerra to arbitration ...; and

B. This matter is stayed and abated pending the filing herein [sic] the final award rendered in the arbitration proceeding,

It is further ordered that Plaintiff's oral motion made in open court to instruct the arbitration panel to rehear the issue of arbitrability is in all things denied.

Solis commenced the instant mandamus proceeding, complaining that respondent clearly abused his discretion by compelling her case to arbitration.

In support of his motion to compel arbitration in the second suit, as well as in the instant mandamus proceeding, Guerra has, principally, based his arguments on the Federal Arbitration Act ("Act"), 9 U.S.C., section

---

1. Whether Guerra, as an individual and absent IBC as a co-defendant, has standing to enforce the provisions of the alleged depositor's contract between relator and IBC is unclear. Had Guerra, as an individual, sued relator under the depositor's contract, Guerra's contract-related claims would likely have been barred due to Guerra's lack of privity to the depositor's contract. Privity is an essential element to any recovery in an action based on contract. *Major Inv., Inc. v. De Castillo*, 673 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

Maintenance of an action for breach of contract generally requires privity between the party damaged and the party sought to be held liable. *Boy Scouts of Am. v. Responsive Terminal Sys.*, 790 S.W.2d 738, 747 (Tex.App.—Dallas 1990, writ denied). Accordingly, it seems highly doubtful that Guerra, as an individual, has standing to enforce the provisions of IBC's alleged depositor's contract with relator. In the interest of justice, however, we entertain Guerra's arguments relating to the depositor's contract.

48

1, *et seq.*, and case law applying the statute.[2] The Act provides that

> a written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a ***controversy arising out of such contract or transaction,*** ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [emphasis added].

9 U.S.C.A. § 2 (West 1970).

We are thus called on to decide whether Judge Evins clearly abused his discretion in applying the Act to the facts of relator's defamation suit.

### Standard of Review

█ Mandamus will issue only to correct a clear abuse of discretion when the abuse cannot be remedied by appeal. *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (considering whether the trial court misapplied the Act); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

### Federal Arbitration Act

█ Enacted pursuant to the Commerce Clause of the United States Constitution, the Act is a body of substantive law enforceable in both state and federal courts. *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987) (citing *Southland Corp. v. Keating,* 465 U.S. 1, 11–12, 104 S.Ct. 852, 858–59, 79 L.Ed.2d 1 (1984)). Under the Supremacy Clause of the United States Constitution, the Act preempts all otherwise applicable state laws (*i.e.,* state arbitration statutes). *BWI Companies, Inc. v. Beck,* 910 S.W.2d 620, 621 (Tex.App.—Austin 1995). The Act was created to reverse the judiciary's longstanding refusal to enforce arbitration agreements, thus elevating arbitration agreements to the same status as other contracts. *Volt Info. Sciences v. Board of Trustees,* 489 U.S. 468, 474, 109 S.Ct. 1248, 1253,

103 L.Ed.2d 488 (1989) (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985), and *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974)). However, the liberal federal policy favoring arbitration under the Act does not mean that all guiding principles are to be abandoned in slavish deference to an arguably applicable arbitration provision. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 56, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995) ("[T]he [Act]'s pro-arbitration policy does not operate without regard to the wishes of the contracting parties."). Clearly, there are limits to the Act's applicability. *See, e.g., Volt Info. Sciences,* 489 U.S. at 474, 109 S.Ct. at 1253 ("[Section] 4 of the [Act] does not confer a right to compel arbitration of any dispute at any time....").

█ In the broader arbitration context (outside of the narrow confines of the Act), the Supreme Court of the United States has been abundantly clear: Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which she has not agreed to so submit. *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320–21, 8 L.Ed.2d 462 (1962); *Drake Bakeries, Inc. v. Local 50, American Bakery,* 370 U.S. 254, 257, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474 (1962); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

█ A court may not, in assessing the right of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements

---

**2.** In support of his argument regarding applicability of the Act to the instant case, Guerra relies heavily on the courts' opinions in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hospital v. Mercury Const.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *E.Z. Pawn Corp. v. Mancias,* 934 S.W.2d 87 (Tex.1996); and

*Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896 (Tex.1995). All of the foregoing cases, as urged by Guerra, generally represent the proposition that public policy favors arbitration under the Act. With that admonition borne in mind, we shall address the merits of relator's claim.

under state law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern formation of contracts."); *Perry,* 482 U.S. at 492 n. 9, 107 S.Ct. at 2527 n. 9; *Porter & Clements, L.L.P. v. Stone,* 935 S.W.2d 217, 220 (Tex.App.—Houston [1 Dist.] 1996, n.w.h.) ("A clause requiring arbitration is interpreted under contract principles, and the language contained within will be enforced according to its plain meaning unless this would defeat the intention of the parties."). Accordingly, we will employ state substantive law in applying the Act to the instant facts. *See* 4 AM.JUR.2D *Alternative Dispute Resolution* § 73 (1995) ("The same rules of construction and interpretation apply to arbitration agreements as apply to contracts generally. [footnote omitted].").

### Depository relationship

The arbitration agreement upon which Guerra relies is contained by the depositor's contract allegedly existing between relator and IBC, of which institution Guerra is president. Axiomatically, a debtor/creditor relationship is created when a customer opens a general depository account with a bank. Such a bank account constitutes a debt where the bank is the debtor and the customer is the creditor. *See Bandy v. First State Bank, Overton, Tex.,* 835 S.W.2d 609, 618–19 (Tex.1992). A deposit agreement should be construed against the bank, as the preparer of the agreement, in the case of questionable or doubtful construction. *See, e.g.,* 9 C.J.S. *Banks and Banking* § 271 (1996).

### Meeting of the minds

The essence of a contract involves the meeting of the minds between the parties to the agreement. *See, e.g., Sonne v. Federal Deposit Ins. Corp.,* 881 S.W.2d 789, 791 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Zurich Ins. Co. v. Bass,* 443 S.W.2d 371, 374 (Tex.Civ.App.—Dallas 1969, no writ). A promise or obligation tantamount to a contract must be free and voluntary, and each of the parties must communicate their reason to the other so that both may know that their minds have met. *Finley v. Hundley,* 252 S.W.2d 958, 962 (Tex.Civ. App.—Dallas 1952, no writ). There can be no agreement when one party has an intention to make it, but the other has not. *Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency,* 517 S.W.2d 869, 875 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.).

To constitute a contract the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms; and all of them must assent to the same thing in the same sense at the same time. *Finley,* 252 S.W.2d at 962. Their assent must comprehend the whole proposition, and the agreement must comprise all the terms which they intend to introduce into it. *Id.* There is no contract where material terms are left for future adjustment, or are not agreed upon. *Id.*

### Forebearance

The depositor's contract requires that relator forebear from suing IBC, insofar as arbitration is purportedly mandated for claims arising from the depositor's contract. To test the legitimacy of this requirement, we examine analogous law concerning prospective waiver of tort claims. Parties may agree to exempt one another from future liability for negligence so long as the agreement does not violate the constitution, a statute, or public policy. *Allright, Inc. v. Elledge,* 515 S.W.2d 266, 267 (Tex.1974); *Crowell v. Housing Auth. of the City of Dallas,* 495 S.W.2d 887, 889 (Tex.1973); *Derr Constr. Co. v. City of Houston,* 846 S.W.2d 854, 859 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Interstate Fire Ins. Co. v. First Tape, Inc.,* 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

So long as the agreement does not violate public policy, it will be enforceable; it will not violate public policy if there is no disparity in bargaining power between the parties. *Allright,* 515 S.W.2d at 267. When the parties to the contract are private

entities bargaining from positions of substantially equal strength, the agreement is usually enforced. *Allright,* 515 S.W.2d at 267; *Crowell,* 495 S.W.2d at 889; *First Tape,* 817 S.W.2d at 145. If one party is so disadvantaged that it is essentially forced to agree to an exculpatory provision, that provision will be declared void. *Allright,* 515 S.W.2d at 267–68; *Crowell,* 495 S.W.2d at 889.

 We find no authority for the proposition that a party may prospectively contractually exculpate itself with respect to intentional torts. That would be contrary to public policy. Even if the contractual forebearance is valid, when the contract does not supply a definite period for forebearance (as is the case with IBC's depositor's contract), a "reasonable time" requirement will be presumed. *See, e.g.,* Samuel Williston & Richard A. Lord, A TREATISE ON THE LAW OF CONTRACTS § 7:46 (4th ed. 1992) ("[I]t is generally said that a request for forebearance which does not specify the time for which forebearance is requested will be interpreted as requesting forebearance for a reasonable time. [footnote omitted]."); 17A AM.JUR.2D *Contracts* § 546 (1991) ("A contract which provides that it is to continue for a more or less indefinite period may be held to continue for a reasonable time under the circumstances. [footnote omitted].").

### *Discussion*

 The fact that Guerra has never produced even a copy of a deposit contract executed by relator is significant, as relator states in her affidavit, contained in the record, that she has "never executed a Depositor's Contract with the International Bank of Commerce." In an analogous hypothetical situation, suppose that a bank's secured debtor were to breach her security agreement with the bank by, for example, executing—with a third party—a contract for sale of the bank's collateral. In such a case, the bank would likely sue its debtor for breach of

contract.[3] However, failure to show the existence of a contract by the bank would bar its recovery on contract theories. So, too, in the instant case, we are not inclined to allow the real party in interest the benefit of contractual terms, the existence of which he is unable to prove.

 For the sake of argument, however, we shall assume that a depositor's contract exists between relator and IBC, as Guerra alleges. In this case, as in other cases under Texas law, the contract must be construed most strictly against its author (*i.e.,* IBC and, by extension, Guerra). *See Temple–Eastex Inc. v. Addison Bank,* 672 S.W.2d 793, 798 (Tex.1984); *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 115 (Tex.1978). Courts will avoid, when possible and proper, a construction which is unreasonable, inequitable, and oppressive. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 530 (Tex.1987). A reasonable interpretation of an agreement will be preferred to one which is unreasonable. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985); *Portland Gasoline Co. v. Superior Mktg. Co.,* 150 Tex. 533, 243 S.W.2d 823, 824 (1951). We must attempt to achieve a reasonable result consistent with the apparent intent of the parties. *Temple–Eastex Inc.,* 672 S.W.2d at 798.

 As an employee of IBC, relator had her checks deposited to an account there and allegedly had a depository agreement that provided as follows, in pertinent part:

(A) Any controversy between the Parties *arising out of or relating to the agreement or any alleged breach thereof,* shall be settled by arbitration.... [emphasis added].

(B) Arbitrable disputes include any controversy or claim between the Parties including any claim based on contract, tort, or statute, arising out of or relating to the

---

**3.** A plaintiff asserting a breach of contract action must show the existence of a contract between the parties, that the contract created duties, that a breach of the duties occurred, and that the party sustained damages. *See Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 733 (Tex. App.—Corpus Christi 1994, writ denied); *City of*

*Corpus Christi v. Bayfront Associates, Ltd.,* 814 S.W.2d 98, 103 (Tex.App.—Corpus Christi 1991, writ denied); *TCI Cablevision of Texas, Inc. v. South Texas Cable Television, Inc.,* 791 S.W.2d 269, 271 (Tex.App.—Corpus Christi 1990, writ denied).

transaction evidenced by this agreement, ... and *any aspect of the past present or future relationships of the Parties.* [emphasis added].

The only disputes that "shall be settled by arbitration" are those which fit within clause (A)—which arise out of the depository agreement or breach thereof. Therefore, an "arbitrable dispute" under clause (B) must also arise out of the depository agreement or breach thereof under clause (A) in order to be subject to mandatory arbitration under the terms of the agreement. Clause (B) must be read as being restricted by clause (A) to those past, present or future relationships of the parties which arise out of or relate to the instant depository agreement.

It is unquestionable that, pursuant to clause (A), controversies arising out of or relating to the IBC depositor's contract are subject to mandatory arbitration. Clause (B) defines what the term "arbitrable disputes" may encompass, apparently providing that disputes outside the narrow scope of clause (A) are, nevertheless, arbitrable at the consent of the parties (albeit not necessarily mandatorily arbitrable). In any event, only those claims *"arising out of or relating to the [depositor's contract] or any alleged breach thereof"* are mandatorily arbitrable. Clearly, relator's defamation claims asserted against Guerra have nothing to do with the depository agreement, if any, between relator and IBC.

Relator's status as a depositor (*vis-a-vis* IBC) merely created a debtor-creditor relationship wherein relator was the creditor. Because the Act applies to a "controversy arising out of such contract or transaction" (*i.e.,* the deposit of relator's funds in the instant case), we hold the Act to be inapposite to her lawsuit against Guerra alone, in which intentional tort theories are pled by relator.

The minds of relator and Guerra could not have met as to the depositor's contract interpretation urged by Guerra. It is difficult to fathom that one would knowingly compromise her right to sue for intentional tort claims. We must, of course, resolve uncertainties in favor of relator.

We perceive no justification for requiring relator to forebear from suing Guerra for intentional tort claims. Such a proposition is legally indefensible, yet it is precisely the position urged by Guerra. Suppose, as another hypothetical example, the following: that Bank X requires its depositors to execute a depository contract identical, in relevant part, to the agreement at issue in the instant case; that a Bank X depositor closes all of her accounts with Bank X; that, after receiving a check drawn on a Bank X account, the former depositor returns to Bank X (ten or so years after closing her Bank X accounts) to cash the check; and that the former depositor is assaulted and battered by the teller to whom the check is presented. Pursuant to the interpretation urged by Guerra, the former depositor would be required to arbitrate her intentional tort claims against the teller. It seems beyond question that, in the instant case, neither relator nor IBC bargained for or assented to the all-encompassing arbitration clause interpretation which Guerra urges.

Although doubts regarding the scope of an arbitration clause are to be resolved in favor of arbitration, there must be an *initial* showing by the party seeking arbitration that the parties agreed to arbitration. *See Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 920 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). The law is clear that arbitration cannot be ordered in the absence of an agreement to arbitrate. *See Freis v. Canales*, 877 S.W.2d 283 (Tex. 1994). Guerra has failed to surmount the initial burden of showing that an arbitration agreement exists.

Assuming, *arguendo*, that a depositor's contract exists between relator and IBC, it is apparent to us that relator and IBC could not have intended the depositor's contract to control disputes such as the instant lawsuit between relator and Guerra. The Act does not require arbitration of relator's defamation claims in the instant suit, as such claims do not arise from the alleged depositor's contract. Our view is supported not only by the statutes, contract and claims underlying relator's dispute with Guerra, as well as the

decisions cited in this opinion, but also by reasoned commentary in this field.

We hold that Judge Evins clearly abused his discretion by compelling arbitration in the underlying case. The abuse cannot be remedied on appeal, as the order compelling arbitration effectively foreclosed relator's right to appeal. *Freis*, 877 S.W.2d 283 ("[A] party who is compelled to arbitrate without having agreed to do so will have lost [her] right to have the dispute resolved by litigation. Accordingly, such a party has no adequate remedy by appeal."). The petition for writ of mandamus is conditionally granted to order respondent to vacate his order compelling arbitration in the case below. We are confident that Judge Evins will act in accordance with this opinion. The writ will only issue in the event he fails to comply.