

NUMBER 13-08-00313-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‐ EDINBURG

STATEWIDE MOBILE HOMES, L.L.C.
AND MARK DIZDAR, INDIVIDUALLY,                    Appellants,

v.

TESORO INC., A TEXAS CORPORATION
D/B/A AAA CUSTOM & ELECTRICAL SIGNS,              Appellee.

On appeal from the 370th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Garza**

This case involves a contractual dispute regarding a maintenance agreement for an advertisement sign located in Donna, Texas. Appellee, Tesoro Inc., a Texas corporation d/b/a AAA Custom & Electrical Signs ("Tesoro"), filed suit against appellants, Statewide Mobile Homes, L.L.C. ("Statewide") and Mark Dizdar, individually, for failing to make

payments on the agreement. Statewide and Dizdar counterclaimed that Tesoro failed to maintain and keep the sign in good repair in accordance with the agreement. After a jury trial, judgment was rendered in favor of Tesoro. Statewide and Dizdar bring seven issues on appeal. We affirm.

## I. BACKGROUND

Tesoro filed suit against Statewide and Dizdar, alleging that Statewide and Dizdar had breached a maintenance agreement by failing to make required monthly payments in the amount of $660.33. Statewide and Dizdar filed a second amended answer and original counterclaim to Tesoro's petition, asserting numerous affirmative defenses and a cause of action for breach of contract. In their breach of contract action, Statewide and Dizdar contended that they sustained damages due to Tesoro's failure to maintain the advertisement sign and the area surrounding the sign.[1]

The dispute was tried to a jury. After both sides rested, the jury returned a verdict in favor of Tesoro, concluding that: (1) Tesoro complied with the maintenance agreement; (2) Statewide and Dizdar failed to comply with the maintenance agreement; and (3) Statewide and Dizdar's refusal to make payments preceded Tesoro's refusal to provide services. The trial court signed a final judgment awarding Tesoro $122,720.46 in damages and attorney's fees in the amount of $18,500 for work completed at the trial court level, $15,000 for an appeal to this Court, and $7,500 for an appeal to the Texas Supreme Court. This appeal followed.

---

[1] Specifically, Statewide and Dizdar alleged that Tesoro: "failed to maintain the appearance of the sign by way of yard work around the sign, failed in the clearing of debree [sic] from beneath and around the sign and generally failed in maintaining the appearance of the sign." At trial, Dizdar alleged that the sign had several blue neon bulbs that were broken, a hole, and several cracks, which Tesoro did not repair.

2

## II. ALLEGED JURY CHARGE ERROR

By their first and third issues, Statewide and Dizdar argue that the trial court abused its discretion: (1) in awarding money damages when a question regarding money damages was not contained in the jury charge; and (2) assessing liability against both Statewide and Dizdar because the jury charge ambiguously referred to Statewide and Dizdar as one collective party.

## A. Applicable Law

A breach of contract occurs when a party fails or refuses to do something he has promised to do. *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.*, 826 S.W.2d 638, 640 (Tex. App.–Houston [14th Dist.] 1992, no writ). The court determines what conduct is required by the parties, and, insofar as a dispute exists concerning the failure of a party to perform the contract, the court submits the disputed fact questions to the jury. *Meek v. Bishop, Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.–Houston [14th Dist.] 1996, writ denied).

## B. Standard of Review

Jury charge error is reviewed for an abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006 ) (per curiam); *Owens-Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 721-22 (Tex. App.–Dallas 1997, no writ). To determine whether an alleged jury charge error is reversible, we consider the parties' pleadings, the evidence presented at trial, and the charge in its entirety. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663 (Tex. 1999). The goal of a jury charge is to submit the issues for decision logically, simply, clearly, fairly, correctly, and completely, and the trial court has broad discretion in accomplishing that end as long as the charge is legally correct. *Id.* at 664.

A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277; *see Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). A party is entitled to a jury question, instruction, or definition if the pleadings and evidence raise an issue. *Williams*, 85 S.W.3d at 166 (citing TEX. R. CIV. P. 278). This is a substantive, non-discretionary directive to trial courts, requiring them to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

## C. Question on Damages

On appeal, Statewide and Dizdar assert that Tesoro was not entitled to recover damages because it failed to submit the question of damages to the jury and, thus, waived the issue. Tesoro argues that the only issue to be resolved by the jury was whether Statewide and Dizdar were excused from performing under the maintenance agreement due to a prior breach of contract by Tesoro. Tesoro further argues that the amount of damages was an undisputed issue of fact because it was clearly addressed in the maintenance contract. We agree.

The failure to request a jury question on an issue results in waiver of that issue by the party relying on it unless the issue was conclusively established. *See* TEX. R. CIV. P. 279; *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 764 (Tex. App.–El Paso 2000, no pet.). When facts are undisputed or conclusively established, there is no need to submit those issues to the jury. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971); *see XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 633 (Tex. App.–Houston [14th Dist.] 2006, pet. denied); *Meek*, 919 S.W.2d at 808.

In the present case, the jury was asked: (1) whether Tesoro breached the

4

maintenance agreement; (2) whether Statewide and Dizdar breached the maintenance agreement; and (3) whether Statewide and Dizdar failed to make payments on the agreement before Tesoro refused to provide services. The jury subsequently concluded that: (1) Tesoro did not breach the agreement; (2) Statewide and Dizdar did breach the agreement; and (3) Statewide and Dizdar's failure to make payments under the agreement preceded Tesoro's refusal to provide services. No question pertaining to the amount of damages sustained was submitted to the jury because it was not in dispute. *See* TEX. R. CIV. P. 278; *see also Williams*, 85 S.W.3d at 166.

The underlying maintenance agreement had a default and termination clause which discussed the amount of damages to which Tesoro was entitled. The default and termination clause provided the following, in pertinent part:

> Company [Tesoro] may terminate this agreement in any of the following events: (1) Failure of Customer [Statewide and Dizdar] to pay any of the monthly maintenance charges herein provided within ten (10) days of the time herein provided . . . .
>
> The parties expressly agree and understand that Company, entering into this Maintenance Agreement, has based its prices on the basis of the Agreement remaining in effect for the full term of the agreement. In the event this Agreement is terminated for any reason other than fault of Company, including destruction or removal of display, *Customer expressly agrees to forthwith pay to Company 80% of all remaining maintenance payments as liquidated damages and compensation to Company for its loss arising from said agreement not having continued in effect for its full term.*

(Emphasis added.)

Because the maintenance agreement contemplated the amount of damages to which Tesoro was entitled in the event of Statewide and Dizdar's breach, this issue was not in dispute and, therefore, was not required to be submitted to the jury. *See* TEX. R. CIV. P. 279; *Abraxas Petroleum Corp.*, 20 S.W.3d at 764; *see also Sullivan*, 471 S.W.2d at 44;

5

*XCO Prod. Co.*, 194 S.W.3d at 633; *Meek*, 919 S.W.2d at 808. We conclude that the trial court did not err in awarding damages without submitting the question of damages to the jury because submission of that issue was not necessary. *See* TEX. R. CIV. P. 278; *Williams*, 85 S.W.3d at 166; *see also Martin*, 942 S.W.2d at 721-22. Accordingly, we overrule Statewide and Dizdar's first issue.

**D. Alleged Ambiguous Party References in the Jury Charge**

Statewide and Dizdar also contend that the jury charge "incorrectly 'lumped' together Appellants Statewide and Dizdar into a single submission, thereby resulting in an ambiguity in the respective jury questions regarding which defendant was being held responsible." Tesoro argues that: (1) it was undisputed that Statewide and Dizdar were both contractually obligated to perform under the agreement and failed to do so; and (2) Statewide and Dizdar's failure to object to the jury charge waived any error.

Statewide and Dizdar complain about the following language contained in the second and third questions in the jury charge:

QUESTION NO. 2

Did Statewide/Mark Dizdar fail to comply with the Agreement?

Answer "Yes" or "No":

ANSWER: <u>YES</u>

. . . .

QUESTION NO. 3

Which came first, Statewide/Mark Dizdar's failure to make payments or Tesoro's refusal to provide services?

ANSWER ("Statewide/Mark Dizdar" or "Tesoro"): <u>Statewide/Mark Dizdar</u>

"[A]ny complaint to a jury charge is waived unless specifically included in an objection." *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (citing TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1(a)(1)). "A party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling." *Id.* (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)). Statewide and Dizdar did not object to the language contained in the proposed jury charge when prompted to do so by the trial court at the charge conference, nor did they submit a jury question in substantially correct wording that would have apprised the trial court of the alleged error. We therefore conclude that Statewide and Dizdar have waived their third issue. *See* TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1(a)(1); *see also In re B.L.D.*, 113 S.W.3d at 349.

### III. STATEWIDE AND DIZDAR'S LEGAL AND FACTUAL SUFFICIENCY ARGUMENTS

In their fourth and fifth issues, Statewide and Dizdar assert that the evidence supporting the trial court's awards of interest and attorney's fees was legally and factually insufficient.

### A. Standard of Review

When conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether the evidence at trial would allow reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* We will sustain a challenge to the legal sufficiency of evidence only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence

offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists, and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 782-83 (Tex. 2001). However, "'when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In conducting a factual sufficiency review, we do not substitute our judgment for that of the jury; rather, we view all the evidence in a neutral light to determine whether the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *City of Keller*, 168 S.W.3d at 826; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Villagomez v. Rockwood Specialities, Inc.*, 210 S.W.3d 720, 749 (Tex. App.–Corpus Christi 2006, pet. denied).

## B. Legal and Factual Sufficiency of the Damage Award

A claimant in an action for breach of contract must show the existence of a contract between the parties, that the contract created duties, that a breach of the duties occurred, and that the claimant sustained damages. *City of Corpus Christi v. Bayfront Assoc, Ltd.*, 814 S.W.2d 98, 103 (Tex. App.–Corpus Christi 1991, writ denied); *see also Solis v. Evins*, 951 S.W.2d 44, 50 n.3 (Tex. App.–Corpus Christi 1997) (orig. proceeding). On appeal,

Statewide and Dizdar contend that the trial court's damage award was "inappropriate" and "excessive." In particular, Statewide and Dizdar complain about the trial court's award of "accrued interest" in the amount of $94,194.20; they do not contest the underlying damage calculation or any other element of Tesoro's breach of contract cause of action.

In support of their argument, Statewide and Dizdar rely heavily on former article 5069-1.03 of the Texas Revised Civil Statutes. *See* Act of May 24, 1979, 66th Leg., R.S., ch. 707, § 1, 1979 Tex. Gen. Laws 1718, 1718, *repealed by* Act of May 10, 1999, 76th Leg., R.S., ch. 62, § 7.18, 1999 Tex. Gen. Laws 222, 224 (current version at TEX. FIN. CODE ANN. § 302.002 (Vernon 2006)).[2] Former article 5969-1.03 provided that:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

*Id.* Statewide and Dizdar therefore argue that Tesoro should have only received, at most, six percent interest on the damages sustained.

Paul Sullivan, an employee of Tesoro, testified that Tesoro, Statewide, and Dizdar entered into the maintenance agreement on January 27, 2000. He further testified that Statewide and Dizdar: (1) routinely made late payments; (2) only made six of the sixty expected payments; and (3) last paid on October 23, 2000. Sullivan also stated that Statewide and Dizdar were required to pay $660.33 per month, and as a result of this non-payment, Tesoro suffered damages in the amount of $28,526.26 (80% of the remaining fifty-four payments of $660.33 owed). Sullivan noted that Tesoro expended more than

---

[2] Under the finance code, "[a] money judgment of a court of this state on a contract that provides for interest or time price differential earns post[-]judgment interest at a rate equal to the lesser of . . . the rate specified in the contract . . . or . . . 18 percent per year." TEX. FIN. CODE ANN. § 304.002 (Vernon 2006).

$18,000 to repair the sign even after Statewide and Dizdar refused to make payments under the agreement.

Dizdar testified that he signed the agreement in his individual capacity and on behalf of Statewide.[3]  He further testified that the sign did not operate properly by the time Statewide received its first bill.  Specifically, Dizdar contended that blue neon lights in the upper right-hand corner of the sign flickered and that the sign eventually developed a hole and jagged cracks in its bottom portion.  He admitted that Statewide refused to make payments under the agreement in October 2000, when it discovered that Tesoro was not fixing the sign to their satisfaction.  He also admitted that Statewide occasionally made late payments to Tesoro.

The agreement, which was admitted into evidence, provided the following with respect to the "accrued interest" about which Statewide and Dizdar complain:

MAINTENANCE FEE

   Customer agrees to pay Company [Tesoro], upon execution of this agreement, an initial downpayment [sic] of $ 610.00 and thereafter a monthly maintenance fee of $ 610.00 plus all applicable sales taxes for each and every calendar month throughout the terms [sic] of this agreement.  The initial downpayment [sic] constitutes the monthly maintenance fee for the 1st and ____ months of the term of this agreement.

   *In addition to the above maintenance fee, an amount equal to 18% annual percentage rate charged at the rate of 1½% per month shall be due and payable on all maintenance fees, taxes, or service charges remaining unpaid on the 10th day of the month following the original due date of such items.*

(Emphasis added.)

Clearly, the agreement provided a basis upon which the trial court could have

---

[3] In fact, Dizdar stated that he, as a partner of Statewide, personally guaranteed the agreement in the event that Statewide would not or could not make the payments.

awarded Tesoro interest at a rate of 18% on the untimely payments, which undermines Statewide and Dizdar's argument that the parties did not agree on the applicable interest rate. In viewing the evidence in the light most favorable to the judgment, we conclude that the evidence presented at trial could allow reasonable and fair-minded people to determine that: (1) Tesoro sustained $28,526.26 in damages; and (2) the agreement provided for interest to be calculated at 1.5% per month or 18% annually, amounting to $94,194.20 in interest. *See* Tex. Fin. Code Ann. § 304.002; *see also City of Keller*, 168 S.W.3d at 827. Furthermore, the evidence was not so weak or the opposing evidence so overwhelming that the damage award was manifestly unjust. Accordingly, the evidence was legally and factually sufficient to support the trial court's damage award. *See id.* at 826; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761; *Pool*, 715 S.W.2d at 635; *Villagomez*, 210 S.W.3d at 749. We overrule Statewide and Dizdar's fourth issue.

**C. Legal and Factual Sufficiency of the Award of Attorney's Fees**

Statewide and Dizdar further contend that the evidence is legally and factually insufficient to support an award of attorney's fees. Reasonable attorney's fees are recoverable in a suit for breach of contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). The determination of reasonable attorney's fees is a question for the trier of fact. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). The amount of a fee award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *Alford v. Johnston*, 224 S.W.3d 291, 298 (Tex. App.–El Paso 2005, pet. denied).

Courts are to consider the following factors when determining the amount of reasonable attorney's fees: (1) the time and labor required, novelty, and difficulty of the

question presented and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). When making this inquiry, courts are free to look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 767 (Tex. App.–Corpus Christi 2004, no pet.).

In its motion for judgment, Tesoro requested attorney's fees and attached an affidavit executed by its trial counsel, William D. Peisen, in support of its request. In his affidavit, Peisen stated that he spent sixty hours in prosecuting this case and that his hourly rate was $250 per hour, amounting to $15,000 in attorney's fees.[4] In addition, Peisen noted that: (1) post-trial proceedings and discovery would require him to spend an additional fifteen hours on the case at the same $250 hourly rate, constituting $3,750 in additional fees; (2) reasonable attorney's fees for an appeal to this Court would be $15,000; and (3) reasonable attorney's fees for an appeal to the Texas Supreme Court would be $7,500. Statewide and Dizdar filed a joint objection to Tesoro's motion for

---

[4] Peisen averred that the range of reasonable hourly rates for an attorney of his experience in this locality was $250 to $350 per hour.

judgment, contending, among other things, that Tesoro's request for attorney's fees was unreasonable and excessive; however, they did not present any evidence controverting Peisen's affidavit.

Based upon the record before us, we conclude that the trial court's award of attorney's fees is supported by legally and factually sufficient evidence. Accordingly, we overrule Statewide and Dizdar's fifth issue.

## IV. CHALLENGE TO BASIS FOR AWARDING ATTORNEY'S FEES AND INTEREST

In their sixth issue, Statewide and Dizdar argue that the trial court abused its discretion in awarding attorney's fees because the jury did not award Tesoro damages on its breach of contract claim. In their seventh issue, Statewide and Dizdar contend that the trial court further abused its discretion in awarding interest of 18% per annum, a rate higher than allowed by law.

### A. Attorney's Fees and Damages

#### 1. Standard of Review

An award of attorney's fees is reviewed under an abuse of discretion standard. *Dail v. Couch*, 99 S.W.3d 390, 391 (Tex. App.–Corpus Christi 2003, no pet.). The test for abuse of discretion is to determine whether the trial court acted without reference to any guiding rules or principles, or whether, under the circumstances of the case, the trial court's actions were arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

#### 2. Discussion

Section 38.001(8) of the civil practice and remedies code permits an award of attorney's fees for a suit based on a written contract. *See* TEX. CIV. PRAC. & REM. CODE

13

ANN. § 38.001(8). However, "[t]o recover attorney's fees under [section] 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages . . . ." *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

It is undisputed that Tesoro was the prevailing party in this matter. Moreover, the trial court, in its final judgment, awarded Tesoro, among other things, $122,720.46 in damages. Because the jury concluded that Tesoro was the prevailing party in this matter and the trial court awarded Tesoro damages, the trial court did not abuse its discretion in awarding Tesoro reasonable attorney's fees pursuant to section 38.001(8) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *see also Solis*, 951 S.W.2d at 390. Accordingly, we overrule Statewide and Dizdar's sixth issue.

## B. Post-Judgment Interest

As previously mentioned, the finance code provides for post-judgment interest at a rate equal to the lesser of the rate specified in the contract or 18% per year. *See* TEX. FIN. CODE ANN. § 304.002. Furthermore, "when a note specifies a rate of interest before maturity, but is silent about any rate after maturity, the law implies that the pre-maturity rate continues after maturity." *Petroscience Corp. v. Diamond Geophysical, Inc.*, 684 S.W.2d 668, 668 (Tex. 1984) (per curiam). In the instant case, the trial court stated, in the final judgment, that interest shall accrue "at the rate of one and one-half percent per month until paid" or 18% per year. This finding coincides with the interest rate provided by the agreement and does not exceed the limits stated in section 304.002 of the finance code. *See* TEX. FIN. CODE ANN. § 304.002. Because the trial court's post-judgment interest award does not violate the finance code, we conclude that the trial court did not abuse its discretion. *See id.* Accordingly, we overrule Statewide and Dizdar's seventh issue.

## IV. Conclusion

Having overruled all of Statewide and Dizdar's issues on appeal, we affirm the judgment of the trial court.[5]

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 13th day of August, 2009.

---

[5] We need not review Statewide and Dizdar's second issue on appeal because Statewide and Dizdar informed this Court via a letter filed on March 12, 2009, that they intended to abandon the issue on appeal. *See* TEX. R. APP. P. 47.1.