**Patricia Ann WEYNAND, Appellant,**

v.

**Anthony Edward WEYNAND, Appellee.**

No.  05–97–00123–CV.

Court of Appeals of Texas, Dallas.

March 30, 1999.

Rehearing Overruled June 4, 1999.

Diane L. Snyder, Dallas, for Appellant.

Mike McCurley, McCurley, Kinser, McCurley & Nelson, L.L.P., Dallas, Kim Williamson Mercier, Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and MOSELEY.

## OPINION

JOSEPH B. MORRIS, Justice.

This appeal follows a previous appeal and remand by this Court. Appellant Patricia Ann Weynand now contends the trial court erred in refusing to award her half of a marital asset pursuant to a final divorce decree. Appellant further contends the trial court erred in refusing to allow her to amend her pleadings to assert claims for monetary damages as an alternative to claims for specific performance. Because we conclude the trial court erred by failing to follow the law of the case established in a prior opinion of this Court and by refusing to allow appellant to amend her pleadings, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

An agreed final divorce decree between appellant and appellee was approved by the trial court on October 4, 1991. The decree awards appellant and appellee each fifty percent of "any and all shares of GM Class E stock." The decree further divides all stocks owned by the parties, stating that "any and all stocks owned by them on October 4, 1991, are to be divided 50% to [appellee] and 50% to [appellant]. . . ." Finally, the decree contains a residuary or "dragnet" clause awarding appellant and appellee each fifty percent of any and all property owned by the parties that was not otherwise divided specifically in the decree.

On April 17, 1992, appellee filed a motion to clarify and enforce the decree. Appellant responded with a general denial and a cross-motion to clarify and enforce. All matters placed in controversy by the motions were settled with the exception of a dispute over 6,100 shares of General Motors Class E stock. Appellant contended the shares were part of the marital estate on October 4, 1991 and, therefore, divided equally between the parties pursuant to the decree. Appellee argued that the shares were sold before October 4 to pay community debts and were no longer a marital asset on the decree's effective date. The trial court found in favor of appellee. Appellant appealed, and that appeal resulted in an unpublished opinion by this Court.

In our previous opinion, this Court concluded the 6,100 shares of General Motors Class E stock were an asset of the marital estate on October 4, 1991. This Court also noted that it was "obvious" the decree awarded one-half of the General Motors Class E stock to appellant. We then reversed and remanded the case to the trial court for further action consistent with our opinion.

On remand, the trial court conducted a new trial and proceeded to hear evidence about whether and how the 6,100 shares should be divided. Although the trial court ostensibly treated the stock as an asset of the marital estate, it found that, because the shares had been sold before October 4, 1991, only like or similar value could be divided by the decree. Although appellant attempted to make a trial amendment to her pleadings on five separate occasions to allege damages as an alternative to delivery of the stock, the trial court repeatedly refused to grant her leave to do so. The trial court then made the following conclusions: (1) the only possible reference to the General Motors Class E stock in the decree is in the "dragnet" provisions; (2) the court had to look to the intent of the parties to determine whether the stock was included in the assets to be divided by the decree's dragnet provisions; (3) the evidence showed that the parties did not intend to include the stock in the division of marital assets and, therefore, the shares were an undivided marital asset; and (4) appellee's sale of the stock to pay community debts was a "just and right" division of the asset. The trial court further ordered appellant to pay appellee's attorneys' fees of $119,937.85. Finally, the trial court awarded appellee $5,000 if the judgment was appealed to this Court, another $5,000 if it was appealed to the supreme court, and yet another $5,000 if the supreme court granted a writ of error. None of the attorneys' fees on appeal were conditioned on appellee's success. This appeal ensued.

## DISCUSSION

■ In this Court's previous opinion, we clearly held that the 6,100 shares of General Motors Class E stock at issue had not been transferred before October 4, 1991, and were an asset of the marital estate on that date. This holding was not appealed to the Supreme Court of Texas. Accordingly, our conclusions regarding the existence and ownership of the shares constitute the law of the case and govern all subsequent proceedings. *See Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 115 (Tex.App.-Dallas 1991, no writ).

Contrary to our holding, the trial court ruled on remand that the shares were no longer in existence after October 2, 1991, and, therefore, only their value could be divided. This conclusion led to further rulings relating to which portions of the decree were applicable to the asset and the parties' intent regarding its division. As stated above, however, the law of the case established that the 6,100 shares existed on October 4. All shares of General Motors Class E stock in existence on October 4 were unambiguously divided by at least two portions of the decree: one addressing the division of General Motors Class E stock specifically and another addressing the division of stock generally.

■■■ The divorce decree was agreed to by both appellant and appellee. Its construction, therefore, is governed by the law of contracts. *See Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986). When construing an agreement incident to divorce, a court must look to the intentions of the parties as they are manifested in the written agreement. *Soto v. Soto,* 936 S.W.2d 338, 341 (Tex.App.-El Paso 1996, no writ). Only if the agreement is ambiguous may parol evidence be considered to establish intent. *See id.* Because the decree unambiguously grants appellant and appellee each fifty percent of all General Motors Class E stock, the trial court erred in allowing appellee to present parol evidence regarding division of that asset.

■■ Appellee argues that evidence of the parties' intent was necessary to show there was no "meeting of the minds" and to establish his defense of mutual mistake. The term "meeting of the minds" refers to the parties' mutual understanding and assent to the expression of their agreement. ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 4.13 (Joseph M. Perillo ed., rev. ed.1993). To create an enforceable contract, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms. *Finley v. Hundley,* 252 S.W.2d 958, 962 (Tex.Civ. App.-Dallas 1952, no writ). The parties must agree to the same thing, in the same sense, at the same time. *Id.* In this case, there does not seem to be any dispute that both appellant and appellee agreed to divide equally all General Motors Class E stock that was in the marital estate on October 4, 1991. Appellee's evidence about his intent showed only that he did not intend for the 6,100 shares to be in the marital estate on that date. Appellee's use or attempted use of the stock before October 4, however, was not part of the subject matter of the decree. Regardless of appellee's intentions, this Court held in the prior appeal that the stock was a marital asset on October 4, 1991. The minds of the parties met regarding the division of marital assets existing on that date.

■■ Agreed judgments, including agreed divorce decrees, may be reformed for mutual mistake in the underlying agreement. *See Pate v. Pate,* 874 S.W.2d 186, 188 (Tex.App.-Houston [14th Dist.] 1994, writ denied). To be entitled to reformation of the judgment, the party contending mistake must prove there has been "a definite agreement between the parties that has been misstated in the written memorandum because of a mistake common to both contracting parties." *Boyett v. Boyett,* 799 S.W.2d 360, 362 (Tex.App.-Houston [14th Dist.] 1990, no writ) (citing *Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376, 382 (Tex.1965)). On retrial, appellee presented no evidence that the agreement between appellant and him had been misstated. Once again, there seems to be no dispute that the parties agreed to divide evenly all General Motors Class E stock still in the marital estate on the effective date of the decree. Furthermore, appellee presented no evidence that his mistaken impression about the amount of stock left within the marital estate on the effective date was common to both parties.

We conclude the trial court erred in its holdings regarding the existence and ownership of the 6,100 shares, its application of the decree, and its admission of evidence

regarding the parties' intentions. The decree divides the 6,100 shares at issue evenly between appellant and appellee. We sustain appellant's first, third, fourth, fifth, and eighth points of error. Having sustained these points of error, it is unnecessary for us to address appellant's second, sixth, seventh, and ninth points of error.

In her tenth through fourteenth points of error, appellant contends the trial court abused its discretion in denying her motions for leave to file a trial amendment. Because the 6,100 shares of General Motors Class E stock did not exist at the time of the trial on remand, appellant sought to amend her pleadings to seek alternative damages. The trial court denied her leave to amend on five separate occasions.

■■■ Rule 66 of the Texas Rules of Civil Procedure specifically addresses the amendment of pleadings during trial. *See* Tex.R. Civ. P. 66. Before a trial court has any discretion to refuse a proposed amendment under rule 66, the party opposing the amendment must show that he would be prejudiced by its filing either through evidence adduced or by a showing that the amendment is prejudicial on its face. *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.,* 938 S.W.2d 743, 748 (Tex.App.-Dallas 1996, writ denied). Although appellee repeatedly states in his appellate brief that the proposed amendment would have surprised and prejudiced him, he fails to point to anywhere in the record where he adduced *evidence* of prejudice. Accordingly, the trial court had discretion to deny appellant's requested amendment only if the amendment was prejudicial on its face. *See id.*

■■■ An amendment that is prejudicial on its face has three defining characteristics. *Id.* at 749. First, the pleading must assert new substantive matter that reshapes the nature of the trial itself. *Id.* Appellant's proposed amendment in this case merely set out alternative measures for damages that had already been plead-ed. As such, the amendment would not have substantively altered the nature of the trial.

Second, the new matter asserted must be such that it could not have been anticipated by the opposing party in light of the development of the case. *Id.* Given the fact that appellee was not only aware of, but *relied* on, the fact that the stock at issue no longer existed, he could have anticipated that appellant would request measures of damages other than delivery of half the stock.

Finally, allowance of the amendment must not detrimentally affect the opposing party's case. *Id.* Here, both parties were prepared to address and, in fact, presented evidence about the value of the stock. Allowance of the amendment would not have necessitated any further substantive preparation on appellee's part. Because the proposed amendment was not prejudicial on its face, we conclude the trial court had no discretion to refuse appellant's requested amendment. We sustain her tenth and eleventh points of error. We decline to address her twelfth, thirteenth, and fourteenth points of error because they are moot.

■■■ In her fifteenth point of error, appellant contends the trial court erred in granting appellee an unconditional award of appellate attorneys' fees. The judgment in this case awards appellee up to $15,000 if the case proceeds through the various stages of appeal. At no point is this award conditioned upon appellee's success on appeal. A trial court may not grant a party an unconditional award of appellate attorneys' fees. To do so could penalize a party for pursuing a meritorious appeal. *See Smith v. Smith,* 757 S.W.2d 422, 426 (Tex.App.-Dallas 1988, writ denied). We sustain appellant's fifteenth point of error.

In her sixteenth point of error, appellant challenges the trial court's award of trial attorneys' fees to appellee. Based on our disposition of the other points of error, it is

unnecessary for us to address this point. Appellee's award of attorneys' fees is reversed along with the rest of the judgment.

Out of appellant's sixteen points of error, we have reached the merits of half and have sustained each one. The other eight points of error were simply rendered moot by our conclusions. It is rare that we reverse a case on more than one sustained point of error. We are aware that the specialized courts in our district devoted to handling only family issues are given considerable discretion in addressing the subject matter before them. This does not mean, however, that those courts have the discretion to ignore either the opinions of this Court or the rules governing evidence and procedure. We reverse the trial court's judgment. We remand this case for further proceedings to be conducted in strict accordance with the conclusions set forth in this opinion.