

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-123-CV

ROBIN PEARSON                                          APPELLANT

V.

CHARLES STEWART                                        APPELLEE

------------

## FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

This appeal challenges the child support provisions in an agreed decree of divorce and a separate order imposing rule 13 sanctions. Tex. R. Civ. P. 13. In her first issue, appellant Robin Pearson contends that the trial court erred by overruling her rule 329b(g) motion to modify, correct, or reform the agreed decree to adjust the monthly amount of child support payable by appellee Charles Stewart because of the parties' alleged mistake in calculating his 2009 income and bonuses. Tex. R. Civ. P. 329b(g). In her second issue, Pearson challenges the trial court's imposition of $850 in attorney's fees against her as sanctions for filing a groundless pretrial

motion to extend the time to mediate. Because we hold that the trial court did not abuse its discretion by denying the motion to modify, correct, or reform the agreed decree, we affirm the agreed decree. But because the evidence in the record does not support a sanctions award against Pearson, we reverse the trial court's award of sanctions.

## Procedural Background

Pearson and Stewart entered into an agreed divorce decree after a hearing on January 30, 2009. The trial court signed the decree the same day. The decree provided that Stewart would pay $789.17 per month in child support, payable biweekly in installments of $364.24.[1]

Before the hearing, Stewart had filed a motion for sanctions alleging that Pearson's counsel had filed a groundless and frivolous Motion for Extension of Time to Mediate two weeks previously. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. §§ 9.012, 10.001 (Vernon 2002). That motion remained pending after the trial court signed the agreed decree.

Pearson timely filed a Motion to Modify, Correct, or Reform Decree, contending that the parties incorrectly calculated Stewart's net resources for child support purposes based on a mistaken reading of his 2008 W-2, the erroneous inclusion of six months of a lower base pay, and the reliance on that base pay in

---

[1] The rate of the first biweekly payment is listed incorrectly in the original decree as $789.17, the monthly payment; the trial court corrected this clerical error in a nunc pro tunc decree.

2

calculating Stewart's future bonus payments. After a hearing, the trial court denied the motion under section 156.401 of the family code, stating that "the circumstances of the child or a person affected by the order have not materially and substantially changed since the date of the order's rendition on January 30, 2009[,] and . . . it has not been three years since the order was rendered or last modified." The trial court stated at the hearing that "we ignore [civil procedure rule 329b] when we have specific rules in the Texas Family Code that . . . specify that . . . they are more specific as to the limitations and the time periods . . . than is approved under 329(b) [sic] of the Texas Rules of Civil Procedure."

Four days after the hearing, at which the trial court also heard argument on Stewart's sanctions motion, the trial court ordered Pearson to pay Stewart, through his attorney of record, $850 in attorney's fees as sanctions. The trial court specifically found that the Motion for Extension of Time to Mediate "filed by" Pearson's attorney was "groundless and filed in bad faith for the purpose of harassment or for needless delay under Tex. R. Civ. P. 13." Pearson appealed from both the trial court's denial of her motion to modify and the sanctions order.

### Motion to Modify, Correct, or Reform Agreed Decree

In her first issue, Pearson claims the trial court abused its discretion by either refusing to hear her Motion to Modify, Correct, or Reform Decree or by denying it. According to Pearson, the motion to modify was brought under rule 329b(g) and therefore the trial court was required to hold an evidentiary hearing on the motion.

3

Instead, the trial court agreed with Stewart's counsel's contention that such a motion could not be brought unless the requirements of section 156.401 of the family code were met. Pearson thus contends that the trial court was not only incorrect in deciding that section 156.401 "trumps" rule 329b post-trial motions but also in failing to hold an evidentiary hearing on her motion. Pearson further contends that, notwithstanding the trial court's incorrect application of section 156.401, the trial court should have granted her motion because she proved that the parties were mistaken in their calculation of child support.

Rule 329b(g) provides that a motion to modify, correct, or reform a judgment may be filed within the same time periods as a motion for new trial and extends the trial court's plenary power in the same manner as a motion for new trial. Tex. R. Civ. P. 329b(g). The motion must be in writing and must specify how the recently rendered judgment should be modified, corrected, or reformed. *Id.* A party may file a rule 329b motion solely for the purpose of extending the trial court's plenary power. *See Old Republic Ins. Co. v. Scott*, 846 S.W.2d 832, 833 (Tex. 1993) (op. on reh'g).

Family code section 156.401 provides that a trial court

may modify an order that provides for the support of a child . . . if:

(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:

(A) the date of the order's rendition; or

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or

(2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

Tex. Fam. Code Ann. § 156.401 (Vernon 2008). The purpose of section 156.401 is "to prevent vexatious litigation of such matters as custody and support." *Moreland v. Moreland*, 589 S.W.2d 828, 829 (Tex. App.—Dallas 1979, writ dism'd) (construing prior version of statute); *see In re S.E.K.*, 294 S.W.3d 926, 928 (Tex. App.—Dallas 2009, pet. denied) (noting that chapter 156 was enacted to prevent constant litigation in child custody cases).

Here, Pearson timely filed her motion to modify within the trial court's plenary power, alleging that although the parties had agreed that child support should be calculated based on Stewart's most recent available salary and bonus information, they mistakenly used inaccurate information to make that calculation and that because of that mistake, the child support provision of the agreed decree should be modified to reflect the true agreement of the parties. Because the agreed decree involved the first determination of child custody issues between the parties, it was governed by chapter 153 of the family code, not chapter 156. *See In re P.D.M.*, 117 S.W.3d 453, 455–56 (Tex. App.—Fort Worth 2003, pet. denied) (en banc). Chapters 153 and 156 are distinct statutory schemes that involve different issues. *In re V.L.K.*,

24 S.W.3d 338, 343 (Tex. 2000); *S.E.K.*, 294 S.W.3d at 928. Because section 156.401 does not apply to original suits involving child custody, it likewise cannot apply to post-trial 329b motions in such original suits. Thus, we conclude and hold that in an original child custody suit governed by chapter 153 of the family code, family code section 156.401 does not prohibit a party from filing, nor a trial court from considering, a rule 329b(g) motion brought timely within that court's plenary power. *See In re V.L.K.*, 24 S.W.3d at 343; *P.D.M.*, 117 S.W.3d at 455–56. The trial court erred by so holding.

Even though the trial judge erred by overruling Pearson's motion to modify based on its failure to meet the requirements of section 156.401, we nevertheless conclude that the trial court did not err by overruling the motion.

Even an agreed decree may be reformed for mutual mistake. *See Hawkins v. Howard*, 97 S.W.3d 676, 679 (Tex. App.—Dallas 2003, no pet.); *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied); *Pate v. Pate*, 874 S.W.2d 186, 188 (Tex. App.—Houston [14th Dist.] 1994, writ denied). To be entitled to reformation based on mutual mistake, a party must prove that there has been "a definite agreement between the parties that has been misstated in the written memorandum because of a mistake common to both contracting parties." *Pate*, 874 S.W.2d at 188.

At the hearing, the trial court heard argument from both Pearson's and Stewart's counsel regarding the agreement as to child support, which was reached

6

in the trial judge's chambers. Pearson contended that the parties intended to use Stewart's projected 2009 salary, which could not be projected from the 2008 W-2 because of the lower salary Stewart was making during the first half of 2008 and also because the W-2 gross earnings did not reflect amounts that had been taken out for health insurance. But Stewart's counsel argued that the parties did use a pay stub and bonus information from January 2009 to project Stewart's salary for 2009; in other words, they did not use only the 2008 W-2 information and, thus, did not mistakenly calculate the child support amount. Pearson offered the W-2s for 2008 and 2007 into evidence but not the 2009 pay stubs.[2] Accordingly, we conclude and hold that Pearson failed to meet her burden of proving that the parties had a definite agreement that was misstated in the decree and, thus, that the trial court did not abuse its discretion by overruling the 329b(g) motion to modify.[3] *See Pate*, 874

---

[2] Although Pearson complains that the trial court aborted the hearing after determining the motion was prohibited by section 156.401, it is clear that the trial court treated the attorneys' argument on the motion, though unsworn, as evidentiary. Pearson did not object; thus, we overrule her contention that she was denied a hearing on her motion. *See In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008); *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

[3] At the January 30, 2009 hearing, Pearson testified that she agreed to the terms of divorce and that an amount of child support had been calculated "in conference with the judge earlier today." When she expressed some confusion as to why the child support amount was less than what she had been receiving pursuant to the temporary orders, the trial judge explained that a health insurance credit had been applied, which brought the amount down. When the trial court asked if she understood, Pearson answered, "I guess." However, when asked later whether the decree was in her best interest and her daughters' best interests, she said, "Yes."

S.W.2d at 188; *see also Davis v. Shanks*, 911 S.W.2d 390, 396 (Tex. App.—Texarkana 1994) (holding that nonuse of powers granted by rule 329b is reviewed for abuse of discretion), *rev'd on other grounds*, 898 S.W.2d 285 (1995); *Ferguson v. Naylor*, 860 S.W.2d 123, 127 (Tex. App.—Amarillo 1993, writ denied) ("The powers enumerated in Rule 329b are inherent in the trial court and their use will not be disturbed on appeal absent a clear abuse.").

We overrule Pearson's first issue.

## Rule 13 Sanctions

In her second issue, Pearson challenges the trial court's award of $850 in attorney's fees to Stewart as sanctions against Pearson for filing a groundless pleading under rule 13. Tex. R. Civ. P. 13.

**Standard of Review**

We review a trial court's imposition of sanctions under rule 13 for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low*, 221 S.W.3d at 614; *Cire*, 134 S.W.3d at 838–39.

In determining whether the trial court abused its discretion, we must first ensure that there is a direct relationship between the improper conduct and the sanction imposed; in other words, we examine whether punishment was imposed

8

upon the true offender, whether it was directed against the abuse, and whether it was tailored to remedy any resulting prejudice. *Low*, 221 S.W.3d at 614; *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *see also GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) (holding that rule 215's requirement that sanctions be "just" is equivalent to rule 13's requirement that they be "appropriate"). Thus, the trial court must determine whether sanctions should be imposed on the party, its counsel, or both. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006) ("Sanctions may be visited exclusively on the attorney if the evidence demonstrates that the offensive conduct is attributable to counsel alone."); *TransAm.*, 811 S.W.2d at 917. Second, the court must make certain that less severe sanctions would not have been sufficient to promote compliance. *Am. Flood Research, Inc.*, 192 S.W.3d at 583; *TransAm.*, 811 S.W.2d at 917.

Rule 13 provides as follows:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. . . . If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, . . . upon the person who signed it, a represented party, or both.

Tex. R. Civ. P. 13. Rule 13 defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal

9

of existing law." *Id*.; *In re A.S.M.*, 172 S.W.3d 710, 717 (Tex. App.—Fort Worth 2005, no pet.).

Generally, courts presume that pleadings and other papers are filed in good faith. *Low*, 221 S.W.3d at 614; *In re A.S.M.*, 172 S.W.3d at 717. The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Low*, 221 S.W.3d at 614; *GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 731. Improper motive is an essential element of bad faith. *Parker v. Walton*, 233 S.W.3d 535, 540 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Wallace v. Inv. Advisors, Inc.* 960 S.W.2d 885, 889 (Tex. App.—Texarkana 1997, pet. denied). Bad faith is not simply bad judgment or negligence but the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Keith v. Solls*, 256 S.W.3d 912, 916 (Tex. App.—Dallas 2008, no pet.); *Parker*, 233 S.W.3d at 540. "'Harass' is used in a variety of legal contexts to describe words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person." *Keith*, 256 S.W.3d at 916–17; *Parker*, 233 S.W.3d at 540.

**Applicable Facts**

Pearson's counsel mailed the Motion for Extension of Time to Mediate that is the basis of the sanctions motion on January 14, 2009, the last day set in the pretrial scheduling order for the parties to mediate. The case had been set for trial on January 30, 2009 since November 7, 2008. The motion to extend indicates that

10

[n]umerous requests have been made to [Stewart] regarding obtaining copies of his payroll records, to which there has been no response. Eventually, a Subpoena was served on his employer's parent corporation. Those records are being gathered and are expected to be received by January 29th. Mediation cannot be conducted in good faith without complete and accurate payroll records.

Only counsel signed the motion, which contains a Certificate of Conference stating, "I hereby certify that a call was made to [counsel for respondent] and no objection was made to the filing of this Motion for Extension of Time to Mediate."[4]

Although the trial court granted the motion to extend time to mediate, it did not continue the trial date, nor did any party request that it do so.

Stewart's motion for sanctions begins by asking the trial court to impose sanctions against Pearson's attorney for filing a groundless pleading in violation of rule 13 and section 9.012 of the civil practice and remedies code and a frivolous pleading in violation of section 10.001 of the civil practice and remedies code. In the "Facts" section of the motion, it states

> 5. [Pearson] alleges in paragraph (1.) of the Motion [for Extension of Time to Mediate] that "numerous requests have been made to [Stewart] regarding obtaining copies of his payroll records, **to which there has been no response". (Exhibit No. 1)**
>
> 6. **This statement is an absolute fabrication and MISREPRESENTATION OF FACT TO THIS COURT.** Despite the fact that [Pearson] never filed a request for production or any other discovery request, [Stewart] has provided copies of the pay stubs and tax documents to [Pearson's] Attorney on SEVEN separate occasions . . . .

---

[4] Stewart's counsel argued to the trial court that this certification is misleading and false.

11

What follows is a list of all the related documents that Stewart's counsel provided to Pearson's counsel between May and December 2008, over forty different items.

Attached to the motion for sanctions as an exhibit is a December 19, 2008 letter from Stewart's counsel to Pearson's stating,

> In addition to numerous faxes to your office of his pay-stubs, at the September 5, 2008 court appearance I provided you with a packet containing all of Charles's pay and bonus check stubs to date, with the exception of checks for the pay-periods of January 17-30, 2008, June 19-July 2008.  Please note that every pay stub has the YEAR-TO-DATE amount.  This includes all of his bonus checks. **You can verify this by subtracting the gross bonus from the gross year to date on the regular pay-stub for the subsequent pay-check.** Your insistence that Charles is somehow hiding his bonuses is absolutely unfounded. Every penny that Charles is paid through his employment is reported in the year-to-date column. Therefore, his bonuses are included in the calculation of his child support obligation.

The letter also states that paystubs for several pay periods between October 23, 2008 and December 17, 2008 are attached.  The letter closes by reminding counsel of the mediation deadline and suggesting a mediator.  Also attached are numerous fax cover sheets dated from July to September 2008, with copies of attached pay stubs.

On December 19, 2008,[5] a subpoena was issued to Stewart's employer compelling production of all copies of Stewart's Statement of Earnings and Deductions for all periods prior to June 7, 2007; all periods between June 20, 2007 and July 19, 2007; all periods between December 5, 2007 and December 20, 2007;

---

[5] The discovery deadline was January 5, 2009.

all periods after June 18, 2008; and all "Bonus" periods or periods for which the pay was other than "Regular." The subpoena also compelled production of a copy of Stewart's 2008 W-2 and "[a]ll other employment and pay records relating to" Stewart.

On December 29, 2008, Pearson's counsel sent a letter to Stewart's counsel stating,

> Of the dates you have suggested, Tuesday, January 13, 2008 [sic] works best for me. However, that would be subject to my receipt of the documents requested from Mimi's Cafe's parent corporation. It has up to 30 days to produce those documents, but it may produce them early, in which case I could make those dates. Otherwise, it may be as late as the 21st before the documents are produced. So, you may want to make tentative arrangements for us to mediate on the 13th, but make sure that the mediator understands that it is subject to my receipt of the subpoenaed documents.

At the hearing on the sanctions motion, the trial court apparently took judicial notice of the documentation attached to Stewart's motion for sanctions, which included copies of correspondence with Pearson's counsel, including copies of pay stubs provided to him.[6] Stewart then testified that he first retained his counsel around May 2008 and that "on numerous occasions," he sent payroll information to her office so that she could provide it to Pearson's counsel. He acknowledged that his counsel had copied him on that correspondence. He also agreed that, to his knowledge, no formal discovery had ever been filed asking for those documents other than two subpoenas on his employer's corporate office. According to Stewart,

---

[6] After counsel's request for judicial notice, there was a discussion between counsel and the trial court as to which documents counsel was referring to, after which, the trial court answered, "Okay."

"the legal department of SWH Corporation notified [him] that [his] payroll records were requested and asked if [he] would release them, and [he] said yes." This was before the December 2008 subpoena, but Stewart could not remember when.[7] He was notified in January 2009 that the records had been subpoenaed again. When asked if he had formed an opinion about Pearson's concerns over the course of the suit, he answered that "I believe that they, or my ex-wife, thinks that I was hiding several thousand dollars, because I was not turning over every single paycheck." He then admitted that he did not give his counsel every pay stub, stating, "I'm not in the habit of keeping my check stubs. I'm surprised I had as many as I did."

The court initially denied Stewart's sanctions motion. But the court allowed further argument from both parties. Stewart argued that the basis of the motion to mediate was a "substantial misstatement of fact" that no payroll information had been provided despite counsel's providing Pearson's counsel with such information over the course of several months. Counsel also argued,

> And I believe that the evidence shows from my exhibits and from Mr. Stewart's testimony and the filings before you that he in fact did know that this was a groundless pleading.
>
> And I would argue, Your Honor, that this was filed as a means to delay or harass my client, who they continually accuse of hiding money, yet it's not shown on any of the - - they have not been able to produce any evidence of that and they have not even filed discovery. So, I just think they are trying to delay this to last even longer so maybe something would appear.

---

[7] Pearson's counsel later told the trial court that the first subpoena was served between February and May 2008.

14

Pearson's counsel admitted that he did receive a "series of productions" from Stewart's counsel but that "there were also big holes in what was being produced."

He explained,

> As we moved well into '08, there were still records from '07 that I had not received and I could see I was unable to reconcile the - - the numbers that were being presented to me with the W-2 and felt that I should have an entire set of those documents.

> Now, I did, early on when I was not getting the records, did subpoena the employer and [Stewart's counsel] stepped in at that point in time and said, you don't need to do that, I will provide those documents to you.

He also admitted that after Stewart had hired counsel,

> [s]he came in, did the appropriate thing and contacted me and said, you don't need to follow through with the subpoena; we will provide them to you. And she did do a good job of providing them to me and I have no reason to think that she didn't provide me with everything that she had. But we didn't have everything.

> And as that went on into the fall, at least in September I wrote her and said, I'm still needing these remaining pay records.

> In November I wrote to her and said, I'm still missing 13 of the pay records. I think at some point after that I said, we are still missing 17 pay records.

> As we got into December, we are getting some pay records during that time, but we are still missing pay records. As of December 19 we are missing 18 pay records. We got some that date and dropped it down to 13.

> But as we were getting closer to trial date, it was appearing that we were not going to be able to get all of the pay records. And I understand that Mr. Stewart has lost them. I can't find all my credit card statements. You know, I understand that.

15

But we still felt like we needed those pay records.

He also admitted that he did not participate in any formal discovery.

In describing the thirteen missing records, Pearson's counsel stated that some of them were from late 2007 and some were from throughout 2009. He said that Stewart's counsel had acknowledged that those records were still missing each time she sent new ones, and that is why he issued the subpoena in December because he realized those were apparently permanently lost. He did not receive them in response to the subpoena until the morning of trial.

According to Pearson's counsel,

[i]t was something that because of the history of the case, something that *I felt I needed to have a complete picture of. I needed to have a complete picture for my client*.

My client was very concerned about not getting the appropriate amount of child support and *I felt like I needed the entire picture*.

*Now, counsel stated that - - that the motion was filed at the last minute, and that is true. I knew that the date that our motion to extend was filed was the last date in this court's order that we were to have mediated*.

And the motion to extend was not to delay the trial; was not to prejudice anybody; did not require anybody else's time, just simply to say can you give us some more time to mediate, because at that point in time I still did not have those records from - - from the employer, which is what I was wanting so I could sit down and in good faith and full knowledge, sit down and mediate the case.

So, that's what that was about, and that's all it was about was to give us more time to mediate. And the records in there, although not stated well because it should say is outstanding in there, but it didn't say outstanding in the motion. But that's what we were searching for,

16

these items that we'd been asking for for sometime apparently did not exist, apparently Ms. Estrada didn't have them and apparently Mr. Stewart [didn't either].

I'm not even blaming Mr. Stewart. We loose [sic] things and - - but we felt like we needed them to have the complete picture.

And so that's what the motion was filed for. . . .

*Was this overkill? It may have been overkill in terms of the document production*. But I could also have buried them in interrogatories and requests for admissions and all that kind of stuff. That was not my intent. If that had been my intent, I know how to paper discovery.

But I had Ms. Estrada's representation that she would send me the documents she had, and I believe that she did. But there were still some missing, and that's what we were trying to get to.

. . . .

There was no  - - no indication in anyway of that motion could have harrassed [sic] the respondents at all. That is they weren't - - we didn't have a deposition - - we didn't have a mediation date on the day that was filed. I was - - it was not - - we had not mediated.

. . . .

I did not feel like it was appropriate just to simply ignore that date, and so that's what the motion to extend time was intended to do, is to not ignore what the court had ordered and to get some extra time to hopefully get some documents so that we could mediate at that time.

That created no prejudice to [Stewart]. They hadn't mediated yet and that was giving them more time to get that done.

[Emphasis added.]

17

Stewart's counsel pointed out that not all of the pay stubs were necessary because Pearson's counsel had Stewart's W-2s for 2007 and 2008, and he could have calculated Stewart's pay with that information and the existing pay stubs.

After the hearing, the trial court ordered sanctions specifically under rule 13, stating, "The Court finds that Rule 13 would support a groundless [sic] and brought for the purpose of harassment and needless delay as well."[8] However, the trial court sanctioned Pearson herself, stating

> I'm sanctioning [Pearson] for $850 to be paid to Mrs. Estrada for the harassment and delay, and needlessly increasing the cost of litigation caused with the request for information on the payroll records that you have [been] privy to and that could have determined the child support amounts from that. I find that was excessive and needless and increased costs for the other side unnecessarily.

**Analysis**

Pearson contends that there is no evidence to support a finding that she acted in bad faith.[9] The only evidence regarding Pearson's involvement is Stewart's testimony that she became convinced he was hiding money. But there is no evidence regarding her knowledge of or complicity in the filing of the motion at issue. Her counsel did not indicate that she approved of the filing, and although he

---

[8] The trial court had previously found that Pearson's counsel filed the motion to extend erroneously, but not frivolously, before initially declining to award sanctions. But the trial judge changed her mind after additional argument.

[9] Because the trial court ordered Pearson rather than her attorney to pay the sanctions, we must determine whether sanctions against only Pearson herself are just. *See Am. Flood Research, Inc.*, 192 S.W.3d at 583; *TransAm.*, 811 S.W.2d at 917.

referenced her fear that Stewart was not being forthcoming with his financial information, he stated that *he* needed the records to get a complete picture for his client, even though he could have gleaned the needed information from the documentation already provided him. Here, the conduct at issue is clearly that of Pearson's counsel and not of Pearson herself, other than her reliance on his representation.[10] Thus, there is no evidence of any improper motive on Pearson's part in filing the motion. Accordingly, we conclude and hold, on the facts of this record, that Stewart failed to overcome the presumption of good faith as to Pearson and that the trial court abused its discretion by imposing sanctions against Pearson. *See Low*, 221 S.W.3d at 614; *Am. Flood Research, Inc.*, 192 S.W.3d at 584–85; *Glass v. Glass*, 826 S.W.2d 683, 687 (Tex. App.—Texarkana 1992, writs denied).

We conclude and hold that the trial court abused its discretion by imposing sanctions against Pearson. We sustain her second issue.

## Conclusion

Having overruled Pearson's first issue, we affirm the trial court's order denying her motion to modify, correct, or reform the agreed decree. But having sustained her second issue, we reverse the trial court's March 19, 2009 order imposing sanctions

---

[10] In arguing the propriety of sanctions, Stewart's counsel even asserted that the filing of the motion to extend showed a course of conduct by Pearson's counsel, relying on a prior opinion in which a trial court had sanctioned him in a different case. *See Elkins v. Stotts-Brown*, 103 S.W.3d 664, 667 (Tex. App.—Dallas 2003, no pet.).

against Pearson and order that Stewart take nothing from Pearson on his sanctions motion.[11]

                                        TERRIE LIVINGSTON
                                        CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  May 6, 2010

---

[11] Stewart did not file his own notice of appeal.  Thus, even if we were to determine that sanctions were otherwise proper, we could not modify the sanctions order to order Pearson's counsel to pay the award, nor remand for the trial court to consider sanctioning Pearson's counsel.  *See* Tex. R. App. P. 25.1(c); *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008); *Sellers v. Foster*, 199 S.W.3d 385, 402 n.13 (Tex. App.—Fort Worth 2005, no pet.).