

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00181-CV

EDOSOMWAN OSA                                                     APPELLANT

V.

NEILL INVESTMENTS, LLC                                           APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY
## TRIAL COURT NO. 2015-002204-3

----------

## MEMORANDUM OPINION[1]

----------

Appellant Edosomwan Osa challenges the trial court's grant of a final

summary judgment in favor of Appellee Neill Investments, LLC (Neill

Investments). Determining that there are genuine issues of material fact

surrounding the existence and enforceability of a valid, binding contract between

---

[1]*See* Tex. R. App. P. 47.4.

Osa and Neill Investments, we reverse and remand the trial court's judgment for further proceedings.

## BACKGROUND

On April 15, 2015, Neill Investments sued Osa for breach of contract and statutory fraud seeking attorney's fees and the specific performance of an alleged real estate contract related to the sale of Osa's home at 818 Wind Brooke Drive in Arlington, Texas (the Wind Brooke Home). In its petition, Neill Investments alleged that the parties had executed a standard form Texas Real Estate Commission One to Four Family Residential Sales Contract (the Contract) for the sale of the Wind Brooke Home on January 12, 2015 and that under the terms of the Contract, closing was to take place on or before February 13, 2015. Neill Investments further alleged that "[t]he parties [had] agreed to extend the closing date based on a mechanics and materialman's lien that was outstanding on the property," but Osa had "failed to get the lien removed." Neill Investments also alleged that it had sent Osa written notice of a date on which closing would take place, but Osa did not attend the closing.

Neill Investments filed a motion for traditional summary judgment contending that Osa breached the Contract by failing to close on February 13, 2015 and that Osa committed "statutory" fraud because he had no intention of closing at the time the Contract was executed. *See* Tex. Bus. & Com. Code Ann. § 27.01 (West 2015) (providing a cause of action for fraud in real estate transactions). As summary judgment evidence, Neill Investments attached the

2

Contract and the affidavit of Michael Neill, managing partner of Neill Investments. In the affidavit, Mr. Neill stated that after execution of the Contract, he took the Contract and $500 earnest money to a title company. He also averred that he wrote a $25 check to Osa for the termination option in the Contract, but he did not exercise his option. Mr. Neill's affidavit further stated that he went to the closing on February 13, 2015, but Osa did not attend. Mr. Neill's affidavit did not mention any agreed extension of the closing date by the parties or any notice sent to Osa regarding the closing date as alleged in Neill Investments's petition. In addition, Neill Investments attached to its motion for summary judgment the affidavit of Neill Investments's attorney in support of its request for an award of $1,500 in attorney's fees.

Osa filed a response to the motion for summary judgment. Among other arguments, Osa contended that there were genuine issues of material fact precluding summary judgment related to Neill Investments's breach of contract claim. Osa pointed out that Mr. Neill's affidavit stated that the Contract was executed on January 12, 2015, but in the actual Contract, the "executed" date field was left blank. Osa further argued that "[w]hen an 'EXECUTED' date is left blank the parties are still in the 'offer' stage." Osa also contended Neill Investments stated in its petition that the parties agreed to extend the closing date, and thus by its own admission, Neill Investments was aware that the closing date would not be on February 13, 2015 as it was contending in its motion for summary judgment.

3

In support of his response to the motion for summary judgment, Osa attached an email dated January 20, 2015 to him from Mr. Neill stating that "[t]he bank is waiting on the appraisal and the title work," that "[t]hey anticipate we should be able to close some time mid week next week," and that "I will keep you posted as we progress." Osa also attached his own affidavit where he swore that (1) on February 18, 2015, the parties were still discussing the terms of their agreement; (2) on that date, Mr. Neill sent him an email about a "mutual benefitted agreement" regarding a contractor; (3) there is no mechanic's lien attached to the Wind Brooke Home; (4) the parties did not agree on a closing date of February 13, 2015; and (5) he did not receive the earnest money or termination fee. Osa further attached a February 18, 2015 email (five days after the alleged closing date) to him from Mr. Neill in which Mr. Neill stated: "I understand you are having a problem resolving your situation with your contractor" and that "[w]e have the ability to partner on this project and it won't cost you any money, you won't have to pay your contractor until we sell the house."

In February 2017, the trial court granted summary judgment for Neill Investments and ordered specific performance of the Agreement, requiring Osa to attend a closing and convey fee simple title of the Wind Brooke Home to Neill Investments. The trial court also awarded attorney's fees to Neill Investments.[2]

---

[2]There was no mention of Neill Investments's claim for statutory fraud in the trial court's February 2017 order. And while Neill Investments's motion for

4

Osa then moved for rehearing and a new trial, which the trial court denied after a hearing.

## DISCUSSION

Osa brings three issues on appeal, contending that the trial court (1) erred in granting summary judgment on Neill Investments's breach of contract claim; (2) erred in ordering specific performance of the Contract; and (3) erred in awarding attorney's fees to Neill Investments. Specifically, in its first issue, Osa argues that the trial court erred in granting summary judgment because there are

summary judgment stated that it was entitled to summary judgment on its fraud claim "inasmuch as Osa had no intention of closing on the property when he signed the Contract," it raised no independent ground, argument, or evidence supporting summary judgment on that claim. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *Powell v. Knipp*, 479 S.W.3d 394, 408 n.9 (Tex. App.—Dallas 2015, pet. denied) (a summary judgment may not be granted on grounds not set out in the motion for summary judgment). Further, the February 2017 order did not unequivocally state that it finally disposed of all parties and claims. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("[W]hether a judicial decree is a final judgment must be determined from its language and the record in the case."). Because we were concerned that the February 2017 order was neither a final judgment nor an appealable interlocutory order, we abated this appeal on January 5, 2018 to allow the trial court to consider rendering a modified order making the February 2017 order final. *See* Tex. R. App. P. 27.2.

Upon abatement, the trial court signed a "Modified Order Granting Plaintiff's Motion for Summary Judgment" granting Neill Investments's motion for summary judgment and stating that it was "final and appealable and disposed of all parties and claims. Plaintiff shall take nothing with regard to its statutory fraud claim." Although the trial court's modified order erroneously disposed of Neill Investments's statutory fraud claim, it is nonetheless clear to this court that the trial court's order is a final, appealable order disposing of all claims and parties. *See Lehmann*, 39 S.W.3d at 200 ("A judgment that grants more relief than a party is entitled to is subject to reversal, but it is not, for that reason alone, interlocutory.")

5

genuine issues of material fact as to whether there was a "meeting of the minds" between the parties as to when the Contract was executed and as to the closing date for the Wind Brooke Home. Because we hold that Neill Investments did not establish as a matter of law that Osa breached a valid contract between the parties, we reverse the trial court's judgment and need not reach Osa's remaining two issues. *See* Tex. R. App. P. 47.1.

## A.    Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

**B.     There Are Genuine Issues of Material Fact Regarding Whether the Parties Entered into a Valid Contract.**

Here, Osa challenges whether the summary judgment evidence presented by Neill Investments was sufficient to establish that Osa breached a contract between the parties.  A breach of contract occurs when a party fails to perform an act it has expressly or impliedly promised to perform.  *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 299 (Tex. App.—Dallas 2009, no pet.).  The elements of a breach of contract claim are:     (1)  the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach.     *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.—Fort Worth 2008, no pet.).  We will focus our analysis to determine whether the evidence establishes that there are no genuine issues of material fact related to the first element necessary to prove a breach of contract—whether Neill Investments established the existence of a valid contract between the parties.

Parties enter into a valid binding contract when the following elements exist:  (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.); *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997,

no writ). "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.—Fort Worth 2008, pet. dism'd) (*citing Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied)). "Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract." *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 348 (Tex. App.—Ft. Worth 1996, no writ) (stating that whether conduct exhibits acceptance is a question of fact for the trier of fact); *Hallmark v. Hand*, 885 S.W.2d 471, 477 (Tex. App.—El Paso 1994, writ denied). In order to make this objective determination, we must necessarily review "the communications between the parties and . . . the acts and circumstances surrounding those communications." *Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied).

Further, if an alleged contract is so indefinite as to make it impossible for a court to fix the legal obligations of the parties, it cannot constitute a valid contract. *Meru v. Huerat*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.). To be a valid, enforceable contract, the parties must agree to the material terms of the contract. *T.O. Stanley Boot Co.*, 847 S.W.2d at 221; *America's Favorite*

*Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, writ denied). Indeed, it is not enough that one party thinks that he has made a contract; he must show that the intentions of the parties to make a contract have been expressed in a matter that the court can understand. *Bendalin v. Delgao*, 406 S.W.2d 897, 899 (Tex. 1966) (quoting 1 Corbin on Contracts § 95 (2nd ed. 1963)).

Osa first contends that because the Contract is undated, an essential term of the Contract was left out, and it is thus unenforceable. *See Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ) ("An alleged agreement which is too vague, indefinite and uncertain is not an enforceable contract, and a contract is not enforceable when the agreement of the parties leaves an essential term for later determination and it is never determined."). We agree with Osa that the summary judgment evidence raises a fact question about whether the parties were still in the offer stage of negotiating the Contract.

The lack of a date of execution in the Contract does not, alone, necessarily show a lack of a meeting of the minds. However, it raises a fact issue on the question when we consider it in the context of the rest of the Contract and along with other evidence. As asserted by Osa in the trial court, a number of the parties' obligations in the Contract were triggered by or had deadlines based on the Contract's "effective date," defined in the Contract as the date of execution. For example, Neill Investments's deadline for obtaining a survey of the property began to run from the effective date, and Osa's limit on leasing the property and

9

obligations to repair casualty damage to the property started with the effective date. However, the record before us simply does not show when the Contract was executed. Rather, while the Contract shows that it was signed by Neill Investments and Osa, it is undated and the "executed" date above the signature lines of both parties is blank. Further, in Mr. Neill's affidavit in support of his company's motion for summary judgment, he merely testifies that the Contract was entered "[i]n or around" January 12, 2015, providing no clarity as to when, and if, the parties actually executed the Contract.

Further complicating matters as to whether the Contract is valid and binding on the parties are fact issues surrounding whether the parties agreed to a firm closing date. Although the undated Contract does provide that the parties close on the sale of the Wind Brooke Home on February 13, 2015, Neill Investments's petition unequivocally states that "**[t]he parties agreed to extend the [February 13, 2015] closing date based on a mechanics and materialman's lien that was outstanding on the property**." [Emphasis added.] Despite this statement, Mr. Neill's affidavit avers that he appeared at the closing on behalf of Neill Investments on February 13, 2015.

In addition, on February 18, 2015, five days after the alleged contracted closing date, Mr. Neill emailed Osa, stating:

> I understand you are having a problem resolving your situation with your contractor and I think I may have a solution that does not require any more money out of your pocket.

We have the ability to partner on this project and it won't cost you any money, you won't have to pay your contract until we sell the house and you can share in the profits from the sale of the house.

If you are interested please give me a call so I can explain how this will be mutually beneficial and we can process with the rehab of the house.

Thanks,

Mike Neill

This evidence suggests, and certainly presents a question of material fact, that the parties did not reach a meeting of the minds that the agreed closing date was to be February 13, 2015 as contended by Neill Investments. Further, Osa included with his summary judgment response Mr. Neill's January 20 email updating Osa on "where we are on the purchasing process," informing Osa that the bank did not yet have title documents or an appraisal, and asking if Mr. Neill's contractor could have access to the Wind Brooke Home to "work up a bid" for Mr. Neill. Yet in his next email to Osa, Mr. Neill talked about *Osa's* dealings with his own contractor. The language of these emails suggest that the parties were still negotiating whether the Wind Brooke Home would be sold "as is," as provided under a provision in the Contract, or whether Osa would have a contractor do rehab work on the house, and further negotiating whether Osa would partner with Neill Investments on repairs on the house and share in Neill Investments's profits generated by the sale of the rehabbed house.

Considering, as we must, all the evidence in the light most favorable to Osa and disregarding all contrary evidence and inferences, we hold that the date

11

of execution of the Contract and the date of closing under the Contract are disputed material issues that are essential in Neill Investments's claim that a valid, binding contract existed and was breached. *See Ludlow v. DeBerry*, 959 S.W.2d 265, 272 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (for an agreement to be enforceable, there must be a meeting of the minds with respect to the agreement's subject matter and essential terms); *see also Hallmark*, 885 S.W.2d at 477 (when one party disputes the existence of a meeting of the minds, the existence of an enforceable agreement is a question of fact). Accordingly, we sustain Osa's first issue and hold that the trial court erred in granting Neill Investments's motion for summary judgment with regard to its breach of contract claim.

## CONCLUSION

Having sustained Osa's first issue and held that the trial court erred in granting Neill Investments's motion for traditional summary judgment, we reverse the trial court's judgment and remand the case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d), 43.3.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL: WALKER and PITTMAN, JJ.; CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: April 12, 2018

12